**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.** 11-_____ |
| **v.** | : | **DATE FILED:** __March 17, 2011__ |
| **BRIAN McDAID,** | : | **VIOLATION:** |
|     **a/k/a "Doc"** | | **18 U.S.C. § 1037(a)(3) (fraud in** |
|     **a/k/a "Cocky Doc"** | : | **connection with electronic mail - 3** |
| | | **counts)** |
| | : | **18 U.S.C. § 2 (aiding and abetting)** |
| | | **Notice of forfeiture** |

## I N D I C T M E N T

## COUNT ONE

**THE GRAND JURY CHARGES THAT:**

## INTRODUCTION

At all times relevant to this indictment:

1.      Defendant BRIAN MCDAID was the sole member of Sili Neutraceuticals, LLC ("Sili Neutraceuticals"), a limited liability company registered in Nevada that, among other things, marketed and sold pills purporting to contain a variety of herbal or "natural" supplement products, including pills that contain the herbal supplement "hoodia" and a precursor to human growth hormone.

2.      Lucid Technologies, Inc. was a corporation owned and operated by co-schemer Robert Disalvo, charged elsewhere.

3.      The Internet website located at www.bulkbarn.com was an Internet forum and message board that was dedicated solely to the subject of transmitting of unsolicited bulk e-mail (or "spam" e-mail), and that allowed visitors to discuss and share with each other techniques and advice for the transmitting of unsolicited bulk e-mail.

**<u>DEFINITIONS</u>**

4.      "Spam" e-mail is unsolicited bulk e-mail that does not meet the requirements of the Controlling the Assault of Non-Solicited Pornography and Marketing ("CAN SPAM") Act of 2003, because the e-mails contain false or misleading header information; use subject lines that do not accurately reflect the content of the message; do not include a valid physical postal address of the sender; and/or do not include a clear and conspicuous explanation of how the recipient can opt out of getting future e-mail from the sender.

5.      An "ISP" is a business that provides access to the Internet, and typically provides the ability to send and receive e-mail, browse the Internet, and download files from Internet websites.

6.      An "Internet Protocol" ("IP") address is a unique numeric address used to identify a computer or other electronic device on the Internet.  Every such device connected to the Internet, or group of devices using the same account to access the Internet, must be assigned an IP address so that Internet traffic sent from, and directed to, that computer is directed properly from its source and to its destination.  IP addresses are typically assigned by Internet Service Providers ("ISP").  ISPs typically log their customers' connections, including IP addresses, and can identify which of their customers was assigned a specific IP address during a particular session.

7.      A "server" is a computer that provides a service, such as e-mail or Web data, to other computers (known as "clients") via a network or the Internet.  When a user accesses e-mail or Internet web pages, or accesses files stored on the network itself, those files are pulled electronically from the server where they are stored and are sent to the client's

computer via the network or Internet.  Servers can be physically located anywhere.

8.     A "proxy server" is a computer that offers a computer network service to allow clients to make indirect network connections to other computers or network services.  A proxy server can be used to hide the originating source IP address of an e-mail communication, as the IP address of the originating source of the communication will be replaced in the header by the IP address of the proxy server.  Use of multiple proxy servers makes it difficult to trace a communication back to its true original IP address source.

9.     An "anonymizer," or an anonymous proxy, is a tool that attempts to make activity on the Internet untraceable.  It accesses the Internet, including sending e-mails, on the user's behalf, protecting the user's personal information by hiding the source computer's identifying information, such as its IP address.

10.    A "bullet proof server" is a server that typically is located physically outside of the jurisdiction of the United States of America, which makes it more difficult for ISPs to cause the server to be shut down because the server is used to send spam e-mails.

11.    A "domain name" is a name used to identify a website on the Internet and typically begins with "www" and ends with ".com," ".net," ".org," or other similar set of letters.

12.    A "hyperlink" is an item on an e-mail or website that, when selected, transfers the user's web browser directly to another location on the Internet.  A hyperlink is usually an underlined word or phrase.

13.    A "website" is a location on the Internet at which an individual or organization communicates with others on the Internet, for example, to sell goods or services or provide information.  It may also provide hyperlinks to other Internet sites.

14.     An "e-mail header" or "header information" is the beginning of an e-mail message that contains detailed information, namely, who the e-mail is to and from, the date, routing information, and the  subject matter.

15.     A "forged e-mail header" is a tactic used to hide the source address of an e-mail by placing false information in the "from" field of the e-mail header.

16.     An "affiliate" is an individual who transmits unsolicited bulk e-mail on behalf of other individuals to earn commissions on any sales generated as a result of e-mails transmitted by the affiliate.

17.     A "sponsor" is an individual who retains affiliates to transmit unsolicited bulk e-mail on their behalf to market products or services sold by the sponsor.

18.     A "spam filter" is a software program that is used by ISPs, and is designed to capture spam e-mails before they are sent to a recipient's e-mail in-box.

19.     A "word salad" is random text inserted into a spam e-mail that is unrelated to the real content of the e-mail.  This text is intended to foil or confuse word-based spam filters by tricking the filters into thinking that the e-mail is legitimate.

## MANNER AND MEANS

It was part of the scheme that:

20.     Defendant BRIAN MCDAID, through his company, Sili Neutraceuticals, used the Internet to market and sell weight loss and other pills.

21.     To carry out these sales, defendant BRIAN MCDAID purchased numerous Internet domain names, which he registered using false names and addresses.  Each domain name was associated with an Internet website that was hosted on bulletproof servers, and that marketed

and sold products from Sili Neutraceuticals.

22.     To generate visitors, or "traffic," to these websites, and therefore increase the sales of Sili Neutraceutical products, defendant BRIAN MCDAID devised a scheme to market these websites through spam e-mails.  To increase the number of marketing spam e-mails that were transmitted, defendant MCDAID retained affiliates to transmit the marketing spam e-mails on MCDAID's behalf.

23.     To identify affiliates willing to transmit spam e-mails on behalf of defendant BRIAN MCDAID, defendant MCDAID visited the Internet website www.bulkbarn.com and placed advertisements representing himself to be a sponsor who was seeking affiliates to transmit spam e-mails on his behalf.

24.     Defendant BRIAN MCDAID ultimately retained affiliates to transmit spam e-mails marketing pills sold by Sili Neutraceuticals as part of the scheme.

25.     Defendant BRIAN MCDAID agreed to pay each affiliate a commission for each sale of Sili Neutraceuticals products generated as a result of a spam e-mail sent by that affiliate.

26.     Defendant BRIAN MCDAID assigned to each affiliate unique domain names, which the affiliates included as hyperlinks in the affiliates' spam e-mails.  When a recipient of the spam e-mail clicked on the hyperlink, the recipient was directed to one of the Internet websites set up by defendant MCDAID for selling Sili Neutraceuticals products.

27.     Defendant BRIAN MCDAID caused each affiliate to transmit millions of spam e-mails containing hyperlinks to websites marketing pills sold by Sili Neutraceuticals by defendant MCDAID and Sili Neutraceuticals.  These e-mails were sent with false and misleading

header information, with subject lines that did not accurately reflect the content of the message, without a valid physical postal address for Sili Neutraceuticals, and/or without a clear and conspicuous explanation of how the recipient could opt out of getting future e-mails from the affiliate.

28.     Defendant BRIAN MCDAID frequently assigned affiliates new domain names as the existing domain names were rendered inoperable by anti-spamming activities.

29.     Defendant BRIAN MCDAID used this system of assigning unique domain names assigned to individual affiliates to track which affiliate was responsible for sending a spam e-mail that generated a sale.

30.     Defendant BRIAN MCDAID created a Internet computer network where affiliates could communicate with MCDAID through "tickets" to request new domain names or raise issues.  Affiliates could also use this network to track their personal sales statistics and commissions.  MCDAID assigned to each affiliate a username and password to this network.

## THE VIOLATION

It was part of the violation that:

### Defendant BRIAN MCDAID retains Robert DiSalvo as an Affiliate

31.     Sometime before in or about January 2005, after Robert DiSalvo answered defendant BRIAN MCDAID's advertisement for an affiliate on www.bulkbarn.com, defendant MCDAID retained DiSalvo as an affiliate to transmit spam e-mails on behalf of MCDAID.  To communicate with MCDAID concerning the sending of the spam e-mails, DiSalvo logged onto a computer network created by MCDAID system using a login and password assigned to DiSalvo by MCDAID.  MCDAID assigned DiSalvo a login name of "Dancer_3."

<u>Transmission of Spam E-Mail Messages</u>

32.     Between at least on or about January 2, 2005 and at least on or about December 1, 2005, defendant BRIAN MCDAID caused to be transmitted, and aided and abetted the transmitting of, millions of spam messages by co-schemer Robert DiSalvo advertising pills sold by defendant MCDAID and Sili Neutraceuticals.  The spam e-mail messages were sent from DiSalvo's computer and contained hyperlinks to domain names, which were established by MCDAID using false names and addresses, and which contained websites advertising pills sold by Sili Neutraceuticals.

33.     Defendant BRIAN MCDAID caused Robert DiSalvo to transmit millions of spam e-mails using the following process:

        a.      DiSalvo purchased and otherwise obtained lists of millions of e-mail addresses, which he used as targets of his spam e-mails.

        b.      DiSalvo used software programs specifically designed to deliver hundreds of thousands of e-mails in a short period of time.

        c.      DiSalvo sent these spam e-mails using proxy servers and anonymizers to mask the IP address of the server used to send his spam e-mails.  These techniques allowed DiSalvo both to hide himself as the sender of the spam e-mails and to disguise and misrepresent the origin and transmission path of the spam e-mails, thereby rendering the header information false and materially misleading.  These techniques also prevented ISPs from taking actions to block DiSalvo's servers from sending more spam e-mails.

        d.      DiSalvo sent these spam e-mails with false and misleading header information, with subject lines that did not accurately reflect the content of the message, without

a valid physical postal address of either himself (as the sender) or Sili Neutraceuticals, and without a clear and conspicuous explanation of how the recipient could opt out of getting future e-mail from DiSalvo.

        e.    DiSalvo used various techniques, including "word salads," to defeat spam filters used by e-mail providers, such as Microsoft and Google.

<u>Ticket Requests From defendant Robert DiSalvo to BRIAN MCDAID</u>

34.    Defendant BRIAN MCDAID assigned to co-schemer Robert DiSalvo unique domain names through electronic "ticket" requests submitted to defendant MCDAID by DiSalvo.

35.    On or about December 24, 2005, at approximately 12:01 p.m., defendant BRIAN MCDAID received from Robert DiSalvo an electronic ticket request, stating:  "Im going to be sending a lot here for the next week may I have 2 doamisn please."  On or about the same date, at approximately 11:56 p.m., defendant MCDAID responded with the following: "Hi  extra-cared.com  curegreen.COM."  MCDAID then assigned DiSalvo the following domain names to be included in DiSalvo's spam e-mails: <<u>www.extra-cared.com</u>> and <<u>www.curegreen.com</u>>.

36.    On or about March 21, 2006, at approximately 10:56 p.m., defendant BRIAN MCDAID received from Robert DiSalvo an electronic ticket request, stating: "Hey Eugene.. Im going to take a run for Doc at the male product tomarrow can you send domains.. and pick the best converting site for me to mail it too."  On or about the same date, at approximately 11:16 p.m., defendant MCDAID responded:  "encouragegood.com decidegood.com."  MCDAID then assigned DiSalvo the following domain names to be included in DiSalvo's spam e-mails: <<u>www.encouragegood.com</u>> and <<u>www.decidegood.com</u>>.

37.     On or about March 23, 2006, at approximately 6:37 p.m., defendant BRIAN MCDAID received from Robert DiSalvo an electronic ticket request, stating: "2 more domains please!"  On or about the same date, at approximately 11:02 p.m., defendant MCDAID responded:  "retwhite.com  retgreen.com."  MCDAID then assigned DiSalvo the following domain names to be included in DiSalvo's spam e-mails: <www.retwhite.com> and <www.retgreen.com>.

38.     On or about March 24, 2006, at approximately 5:30 p.m., defendant BRIAN MCDAID received from Robert DiSalvo an electronic ticket request, stating: "I been mailing to this domain all day and its been going to wwrong place please fix! decidegood.com." On or about the same date, at approximately 5:44 p.m., defendant MCDAID responded:  "This one was closed on registar  Here is the new one for you:  viewmvpre.com."  MCDAID then assigned DiSalvo the following domain names to be included in DiSalvo's spam e-mails: <www.viewmvpre.com>.

                    Payments by defendant BRIAN MCDAID to Robert DiSalvo

39.     Robert DiSalvo provided defendant BRIAN MCDAID with bank account information, so that defendant MCDAID could deposit any commissions earned by DiSalvo into DiSalvo's bank account.

40.     Between on or about July 27, 2005 and March 29, 2006, defendant BRIAN MCDAID paid to Robert DiSalvo wire transfers totaling approximately $14,716 into DiSalvo's Washington Mutual bank account, in the name of Lucid Technologies, as commissions for sales resulting from spam e-mails sent by DiSalvo.

41.     Between at least on or about January 2, 2005 and at least on or about

March 24, 2006, in the Eastern District of Pennsylvania, and elsewhere, defendant

**BRIAN MCDAID,**
**a/k/a "Doc,"**
**a/k/a "Cockydoc"**

knowingly and materially falsified, and aided and abetted the knowing and material falsification

of, header information in multiple commercial electronic mail messages, and intentionally

initiated, and aided and abetted the intentional initiation of, the transmission of such messages.

The volume of electronic mail messages transmitted in furtherance of the offense exceeded 2,500

during a 24-hour period, 25,000 during a 30-day period, and 250,000 during a 1-year period.

In violation of Title 18, United States Code, Sections 1037(a)(3) and 2.

## COUNT TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1 through 30 of Count One are incorporated here.

At all time material to this indictment:

2.      K&D Merchant, Inc. was a Nevada Corporation owned and operated by co-schemer Don Abadie, charged elsewhere.

### The Violation

It was part of the violation that:

#### Defendant BRIAN MCDAID retains Don Abadie as an Affiliate

3.      Sometime before in or about August 2005, after Don Abadie answered defendant BRIAN MCDAID's advertisement for an affiliate on www.bulkbarn.com, defendant MCDAID retained Abadie as an affiliate to transmit spam e-mails on behalf of MCDAID.  To communicate with MCDAID concerning the sending of the spam e-mails, Abadie logged onto a computer network created by MCDAID system using a login and password assigned to Abadie by MCDAID.  MCDAID assigned Abadie a login name of "Superhawk."

#### Transmission of Spam E-Mail Messages

4.      Between at least on or about August 1, 2005 and at least on or about May 9, 2006, defendant BRIAN MCDAID caused to be transmitted, and aided and abetted the transmitting of, millions of spam messages by co-schemer Don Abadie advertising products sold by BRIAN MCDAID and Sili Neutraceuticals.  The spam e-mail messages were sent from Abadie's computer and contained hyperlinks to domain names, which were established by BRIAN MCDAID using false names and addresses, and which contained websites advertising

-11-

pills sold by Sili Neutraceuticals.

5.     Defendant BRIAN MCDAID caused Don Abadie to transmit millions of spam e-mails using the following process:

a.     Abadie purchased and otherwise obtained lists of millions of e-mail addresses, which he used as targets of his spam e-mails.

b.     Abadie used software programs specifically designed to deliver hundreds of thousands of e-mails in a short period of time;

c.     Abadie sent these spam e-mails using proxy servers and anonymizers to mask the IP address of the server used to send his spam e-mails.  These techniques allowed Abadie both to hide himself as the sender of the spam e-mails and to disguise and misrepresent the origin and transmission path of the spam e-mails, thereby rendering the header information false and materially misleading.

d.     These techniques also prevented ISPs from taking actions to block Abadie's servers from sending more spam e-mails; and Abadie sent these spam e-mails with false and misleading header information, with subject lines that did not accurately reflect the content of the message, without a valid physical postal address of either himself (as the sender) or Sili Neutraceuticals, and without a clear and conspicuous explanation of how the recipient could opt out of getting future e-mail from Abadie.

Ticket Requests From defendant Don Abadie to BRIAN MCDAID

6.     Defendant BRIAN MCDAID assigned to co-schemer Don Abadie unique domain names through electronic "ticket" requests submitted to defendant MCDAID by Abadie.

7.     On or about March 5, 2006, at approximately 1:51 p.m., defendant BRIAN

MCDAID received from Don Abadie an electronic ticket request, stating:  "Can I get some domains please  Mine are 100% blocked :)  Thank you."  On or about the same date, at approximately 9:13 p.m., defendant MCDAID responded:  "zg-hood.com  og-hood.com."  MCDAID then assigned Abadie the following domain names to be included in Abadie's spam e-mails: <www.og-hood.com> and <www.zg-hood.com>.

       8.      On or about March 8, 2006, at approximately 9:44 a.m., defendant BRIAN MCDAID received from Don Abadie an electronic ticket request, stating:  "Can I get a few domains please  .com and .net."  On or about the March 8, 2006, at approximately 9:58 a.m., defendant MCDAID responded:  "done  but now we have issues with host DNS, so they will be up when they fix."

       9.      On or about April 2, 2006, at approximately 5:38 p.m., defendant BRIAN MCDAID received from Don Abadie an electronic ticket request, stating:  "can I get a few domains please  Thank you  for weight loss and Hoodia."  On or about April 3, 2006, at approximately 5:22 a.m., defendant MCDAID responded with the following: "Hoodia  df-green.com  df-yellow.com  WD hg-pills.com, hg-prevent.com."  MCDAID then assigned Abadie the following domain names to be included in Abadie's spam e-mails: <www.df-green.com>, <www.df-yellow.com>, <www.hg-pills.com> and <www.hg-prevent.com>.

      10.     On or about April 5, 2006, at approximately 11:42 a.m., defendant BRIAN MCDAID received from Don Abadie, an electronic ticket complaining about the following:  "All domains are going to Hoodia :)  PLease recheck  Thank you."  On or about the same date, at approximately 11:49 a.m., defendant MCDAID wrote back the following: "Sorry, issue fixed  Does act now as this is supposed to be."

Payments by BRIAN MCDAID to defendant Don Abadie

11.     Defendant Don Abadie provided BRIAN MCDAID with bank account information, so that BRIAN MCDAID could deposit any commissions earned by  Abadie into Abadie's bank account.

12.     Between on or about August 5, 2005 and November 30, 2005, defendant BRIAN MCDAID paid to  Don Abadie wire transfers totaling approximately $22,318 into Abadie's Wells Fargo bank account, in the name of K&D Merchant, Inc. as commissions for sales resulting from spam e-mails sent by Abadie.

13.     Between at least on or about August 1, 2005 and at least in or about May 2006, in the Eastern District of Pennsylvania, and elsewhere, defendant

**BRIAN MCDAID,**
**a/k/a "Doc,"**
**a/k/a "Cockydoc"**

knowingly and materially falsified, and aided and abetted the knowing and material falsification of, header information in multiple commercial electronic mail messages, and intentionally initiated, and aided and abetted the intentional initiation of, the transmission of such messages. The volume of electronic mail messages transmitted in furtherance of the offense exceeded 2,500 during a 24-hour period, 25,000 during a 30-day period, and 250,000 during a 1-year period.

In violation of Title 18, United States Code, Sections 1037(a)(3) and 2.

## COUNT THREE

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1 through 30 of Count One are incorporated here.

At all time material to this indictment:

2.      Wilson Internet Enterprises was a company owned and operated by co-schemer Patrick Pruneau, charged elsewhere.

## The Violation

It was part of the violation that:

Defendant BRIAN MCDAID retains Patrick Pruneau as an Affiliate

3.      Sometime before in or about November 2005, after Patrick Pruneau answered defendant BRIAN MCDAID's advertisement for an affiliate on www.bulkbarn.com, defendant MCDAID retained Pruneau as an affiliate to transmit spam e-mails on behalf of MCDAID.  To communicate with MCDAID concerning the sending of the spam e-mails, Pruneau logged onto a computer network created by MCDAID system using a login and password assigned to Pruneau by MCDAID.  MCDAID assigned Pruneau a login name of "Pat P."

Transmission of Spam E-Mail Messages

4.      Between at least in or about November 2005 and at least in or about September 2006, defendant BRIAN MCDAID caused to be transmitted, and aided and abetted the transmitting of, millions of spam messages by co-schemer Patrick Pruneau advertising products sold by BRIAN MCDAID and Sili Neutraceuticals.  The spam e-mail messages were sent from Pruneau's computer and contained hyperlinks to domain names, which were

established by BRIAN MCDAID using false names and addresses, and which contained websites advertising pills sold by Sili Neutraceuticals.

   5.  Defendant BRIAN MCDAID caused Patrick Pruneau to transmit millions of spam e-mails using the following process:

     a.  Pruneau purchased and otherwise obtained lists of millions of e-mail addresses, which he used as targets of his spam e-mails.

     b.  Pruneau used software programs specifically designed to deliver hundreds of thousands of e-mails in a short period of time.

     c.  Pruneau sent these spam e-mails using proxy servers and anonymizers to mask the IP address of the server used to send his spam e-mails.  These techniques allowed Pruneau both to hide himself as the sender of the spam e-mails and to disguise and misrepresent the origin and transmission path of the spam e-mails, thereby rendering the header information false and materially misleading.  These techniques also prevented ISPs from taking actions to block Pruneau's servers from sending more spam e-mails.

     d.  Pruneau sent these spam e-mails with false and misleading header information, with subject lines that did not accurately reflect the content of the message, without a valid physical postal address of either himself (as the sender) or Sili Neutraceuticals, and without a clear and conspicuous explanation of how the recipient could opt out of getting future e-mail from Pruneau.

     e.  Pruneau used various techniques, including omitting an "opt-out" link, to defeat spam filters used by e-mail providers, such as Microsoft and Google.

Ticket Requests From Patrick Pruneau to BRIAN MCDAID

6.      Defendant BRIAN MCDAID assigned to co-schemer Patrick Pruneau

unique domain names through electronic "ticket" requests submitted to defendant MCDAID by

Pruneau.

7.      On or about February 5, 2006, at approximately 10:47 p.m., defendant

BRIAN MCDAID received from Patrick Pruneau an electronic ticket request, with a subject line

entitled "need domains" stating the following: "hi,   i need new domains and can i also have

hoodia design 04 put up on those domains for me please?   Thanks,   Pat".   On or about February

6, 2006, at approximately 10:53 a.m., defendant MCDAID responded with the following: "dp-

yellow.com   dy-blue.com".   MCDAID then assigned Pruneau the following domain names to be

included in Pruneau's spam e-mails: <www.dp-yellow.com>   and   <www.dy-blue.com>.

8.      On or about February 10, 2006, at approximately 12:17 p.m., defendant

BRIAN MCDAID received from Patrick Pruneau an electronic ticket request, with a subject line

entitled "need new domains" stating the following: "hi,   can i get two or three new domains?

thanks, pat".   On or about the same date, at approximately 4:42 p.m., defendant MCDAID

responded with the following: "ld-white.com   ld-yellow.com   ld-magenta.com".   MCDAID then

assigned Pruneau the following domain names to be included in Pruneau's spam e-mails:

<www.ld-white.com> , <www.ld-yellow.com> and < www.ld-magenta.com>.

9.      On or about February 25, 2006, at approximately 11:18 a.m., defendant

BRIAN MCDAID received from Patrick Pruneau an electronic ticket request, with a subject line

entitled "can i get a few new domains", and stating the following: "thanks  pat".   On or about the

same date, at approximately 11:20 p.m., defendant MCDAID responded with the following:

"prosdiet.com  nutritious-all.com".  MCDAID then assigned Pruneau the following domain

names to be included in Pruneau's spam e-mails: <www.prosdiet.com> and

<www.nutritious-all.com>.

      10.    On or about March 15, 2006, at approximately 9:28 a.m., defendant

BRIAN MCDAID received from Patrick Pruneau an electronic ticket request, stating the

following: "can u change the design of my sites to the hoodia0 and also add a few new domains?

thanks,  pat".  On or about March 16, at approximately 8:46 a.m., defendant MCDAID responded

with the following: "gdgive.com  omred.com  gkgreen.com   design changed  sorry for delay -

was lack of domains."  DefendantMCDAID then assigned Pruneau the following domain names

to be included in Pruneau's spam e-mails: <www.gdgive.com>, <www.omred.com>, and

<www.gkgreen.com>.

      11.    On or about the same date, at approximately 10:58 a.m., defendant BRIAN

MCDAID received from Patrick Pruneau a ticket with the following: "hey buddy,  i noticed you

put up hoodia0 but thats not what hoodia0 looks like on the site I choose it from

http://64.34.164.125/designs/. lemme know whats up  Pat".  Or about the same date, at

approximately 11:46 a.m., defendant MCDAID responded with the following: "Sorry, selected

incorrect virtualhost from one of assinged to you.  Issue fixed".

      12.    On or about April 20, 2006, at approximately 4:23 p.m., defendant BRIAN

MCDAID received from Patrick Pruneau an electronic ticket request, with a subject line entitled

"need new domains", and stating the following: "can i get afew new domains please?   Pat".  On

or about the same date, at approximately 9:57 p.m., defendant BRIAN MCDAID responded with

the following: "Of course!   enowhglet.com   esethgnow.com   Is this enough or you need

more?".  MCDAID then assigned Pruneau the following domain names to be included in

Pruneau's spam e-mails: <www.enowhglet.com> and <www.esethgnow.com>.

Payments by BRIAN MCDAID to Patrick Pruneau

13.     Defendant Patrick Pruneau provided BRIAN MCDAID with bank account

information, so that BRIAN MCDAID could deposit any commissions earned by Pruneau into

Pruneau's bank account.

14.     Between on or about November 23, 2005 and on or about May 17, 2006,

defendant BRIAN MCDAID paid to Patrick Pruneau wire payments totaling approximately

$4,107 into Pruneau's LaSalle Bank account, and approximately $2,844 into Pruneau's PayPal

account, in the name of Wilson Internet Enterpises as commissions for sales resulting from spam

e-mails sent by Pruneau.

15.     Between at least in or about November 2005 and at least in or about

September 2006, in the Eastern District of Pennsylvania, and elsewhere, defendant

**BRIAN MCDAID,**<br>**a/k/a "Doc,"**<br>**a/k/a "Cockydoc"**

knowingly and materially falsified, and aided and abetted the knowing and material falsification

of, header information in multiple commercial electronic mail messages, and intentionally

initiated, and aided and abetted the intentional initiation of, the transmission of such messages.

The volume of electronic mail messages transmitted in furtherance of the offense exceeded 2,500

during a 24-hour period, 25,000 during a 30-day period, and 250,000 during a 1-year period.

In violation of Title 18, United States Code, Sections1037(a)(3) and 2.

## NOTICE OF FORFEITURE

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      As a result of the violation of Title 18, United States Code, Section

1037, set forth in this indictment, defendant

**BRIAN MCDAID,**
**a/k/a "Doc,"**
**a/k/a "Cockydoc"**

shall forfeit to the United States of America: (a) any property, real or personal, constituting or

traceable to gross proceeds obtained from such offense; and (b) any equipment, software, or other

technology used or intended to be used to commit or to facilitate the commission of such offense.

2.      If any of the property subject to forfeiture, as a result of any act or

omission of the defendant:

        (a)      cannot be located upon the exercise of due diligence;

        (b)      has been transferred or sold to, or deposited with, a third party;

        (c)      has been placed beyond the jurisdiction of the Court;

        (d)      has been substantially diminished in value; or

        (e)      has been commingled with other property which cannot be divided

              without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 21, United States Code, Section 853.

**A TRUE BILL:**


_____
**FOREPERSON**


_____
**ZANE DAVID MEMEGER**
**United States Attorney**